Submitted June 18, convictions for unlawful possession of methamphetamine and unlawful delivery of methamphetamine within 1,000 feet of a school reversed and remanded; otherwise affirmed November 27, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL ANTHONY WATTS,
*Defendant-Appellant.*

Baker County Circuit Court
10290; A149317

314 P3d 991

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Laura S. Anderson, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

A jury convicted defendant of unlawful possession of methamphetamine, ORS 475.894, and unlawful delivery of methamphetamine within 1,000 feet of a school, ORS 475.892.[1] Defendant appeals, raising four assignments of error, three of which assert that the trial court erred in entering a judgment based on a nonunanimous jury verdict. We reject those assignments of error without discussion. Defendant asserts in his first assignment of error that the court erred by allowing a detective's testimony regarding defendant's credibility. The state concedes that the admission of that testimony was error, but argues that it was harmless. We conclude that admission of that testimony was not harmless and, therefore, reverse and remand.

Our review to determine whether an evidentiary error was harmless requires us to review all pertinent portions of the record. *State v. Sierra-Depina*, 230 Or App 86, 88, 213 P3d 863, *rev den*, 347 Or 290 (2009). With that standard in mind, the facts of this case are as follows. Following up on a tip suggesting that defendant had manufactured methamphetamine in a motel room, Baker City Detective Rilee followed defendant to a restaurant across from Baker High School. Once there, Rilee observed defendant carry a brown paper bag from his truck into the restaurant, and informed Oregon State Detective Conner, who was also observing the area, of what he had seen. A few minutes later, Conner entered the restaurant where he observed defendant sitting at a table with a woman, Chase. Defendant left the bag with Chase upon leaving the restaurant.

Connor questioned Chase after defendant's departure and searched the bag that defendant had left with her. The bag contained about 20 grams of methamphetamine and related paraphernalia, including two glass pipes with white methamphetamine-like residue on them and a leather case with "M Watts" (defendant's first initial and last name) written on it. During questioning, Chase told Connor that she had set up methamphetamine deals in the past and was at the restaurant setting up a methamphetamine deal for defendant.

---

[1] The jury also acquitted defendant of two related charges: unlawful possession of a firearm, ORS 166.250, and unlawful manufacture of methamphetamine, ORS 475.886.

Meanwhile, another officer, Davidson, conducted a traffic stop with defendant. When Rilee arrived he questioned defendant, who denied any knowledge of the methamphetamine and paraphernalia found in Chase's possession. According to defendant, Chase owned the methamphetamine found in the bag and was responsible for writing "M Watts" on the leather case. The officers searched defendant's truck, however, and discovered a man's coat with a methamphetamine pipe in the pocket. At trial, defendant claimed that he was in Baker City to hunt, fish, and possibly buy car parts.

Officer Rilee testified at trial that, based on his training and experience, defendant's pauses during their conversation indicated deception:

"I asked * * * if he'd ever been with somebody that had purchased methamphetamine or if he has ever purchased methamphetamine. I asked [defendant] if he had ever sold methamphetamine. And then after another pause I received a reply of, 'No.'"

After answering questions about his training in analyzing answers to interview questions, Rilee gave the following testimony:

"[Prosecutor]: Given [your interrogation] training and experience, did you use any of that education as it relates to what you saw in [defendant's] responses to you?

"[Rilee]: Yes. I have been trained to look at all facets of a person's answers that they give; the verbal cues, the tone and pitch of their voice, the, you know—whether or not they're sitting closed up and they're not accepting anything you tell them or whether they're open and looking at you and they seem receptive to your questioning.

"As far as when I interview somebody and I'm getting answers right away and keep getting answers right away— there's no pausing—as soon as I ask another question and there's a pause—

"* * * * *

"When I asked a question, after numerous immediate answers and somebody pauses, *that's an indicator to me that there's a deceptive answer.*"

(Emphasis added). Defendant's counsel unsuccessfully objected to those statements. The judge later instructed the jury that

the testimony was Rilee's "opinion" and "[i]t may be worth something, [or] it may be worth nothing," and that they should consider it and draw their own opinions. Defendant testified later in the trial regarding his version of events.

On appeal, defendant contends that Rilee's testimony was an improper comment on credibility. *See State v. Lowell*, 249 Or App 364, 368, 277 P3d 588, *rev den*, 352 Or 378 (2012) (explaining that a witness may not give an opinion as to whether or not he believes another witness, or that another witness is honest or truthful). He argues that the admission of that testimony was not harmless, and that the court's jury instruction did not cure—but actually worsened—the resulting prejudice. The state concedes that Rilee's testimony was erroneously admitted. We agree with the state's concession in that regard. *See id.* The state argues, however, that the error was harmless. In support of its position, the state points to Connor's and Rilee's observation of defendant's activities in the restaurant, the methamphetamine and paraphernalia found in the bag that defendant had taken from his truck, and the methamphetamine paraphernalia found in defendant's truck during the search.

A judgment of conviction will be affirmed, despite the erroneous admission of evidence, if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In evaluating whether evidentiary error is harmless, we do not weigh the evidence or act as factfinder, but instead look at the likely effect of error on the verdict. *Id.* We first determine the issue to which our harmless error analysis applies and then analyze the erroneously admitted evidence in light of other evidence in the record pertaining to that issue. *State v. Johnson*, 225 Or App 545, 550, 202 P3d 225 (2009) (citing *State v. Ennis*, 212 Or App 240, 262, 158 P3d 510, *rev den*, 343 Or 223 (2007)).

Here, we cannot conclude that the erroneous admission of Rilee's testimony was harmless. The focus of our harmless error analysis is the jury's determination that defendant *knowingly* possessed and delivered methamphetamine under ORS 475.892. As the jury was instructed, a necessary element of both counts is a finding that defendant

acted with knowledge.[2] The erroneous admission of evidence that relates to such a "central factual issue" is more likely to affect the jury's determination and less likely to be harmless. *State v. Roller*, 201 Or App 166, 173, 118 P3d 804 (2005) (citing *State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003)).

To find defendant guilty, the jury must have found that defendant acted with knowledge. If the jury believed Chase, it would believe that defendant acted with full knowledge that the bag contained methamphetamine. However, if the jury believed defendant, it would believe that defendant had no knowledge of the methamphetamine or paraphernalia recovered that day. Thus, the jury had to assess credibility in order to determine whether or not defendant acted with the requisite knowledge. In these circumstances, Rilee's testimony regarding defendant's credibility was likely to be harmful. *See Lowell*, 249 Or App at 370 (explaining that, because the case hinged on a credibility contest between the parties, testimony regarding the credibility of either was likely to be harmful).

Further, the jury's determination was likely affected by Rilee's testimony that he had the training and experience to make such a credibility determination. *See id.* (explaining that there was a significant risk that a detective's testimony that a defendant was not credible affected the jury's verdict because it was couched in terms of his expertise and training in detecting untruthfulness). In view of those circumstances, we cannot conclude that there is little likelihood that the error affected the verdict.

Convictions for unlawful possession of methamphetamine and unlawful delivery of methamphetamine within 1,000 feet of a school reversed and remanded; otherwise affirmed.

---

[2] The court's jury instruction defined "knowingly" as an act carried out "with an awareness either that his conduct is of a particular nature or that a particular circumstance exists."